IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TERI L. SCHAFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-3032-CV-S-NKL-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Teri Lynn Schafer ("Schafer") challenges the Social Security Commissioner's denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* [Doc. # 3]. Specifically, Schafer asserts that the Administrative Law Judge ("ALJ") failed to find she had severe mental impairments, to give appropriate weight to her treating physician, and to find her testimony credible. Having jurisdiction under 42 U.S.C. § 405(g), this Court remands the case to the Commissioner for further consideration consistent with this Order.

**I.     Factual Background**

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1]  Schafer[2] alleges she became disabled on

---

[1] Portions of the parties' briefs are adopted without quotation designated.

[2] Teri L. Schafer is sometimes referred to as Teri L. Knauer, her previous name.

1

October 15, 2001, at age 39. In her Disability Report, she stated that she was disabled by people who were slandering her or over-working her, by harassment, and by difficulty in working with others. Schafer completed her GED in 1981 and has worked as a salesperson, a fast-food worker, and a house cleaner.

The medical record indicates the following: On February 13, 2002, and March 29, 2002, Mark Bradford, Psy.D., conducted a psychological assessment of Schafer. She reported taking no mental health care medicine at the time. She also stated she had no problems sleeping or eating, and that she was in pretty good shape physically. Schafer admitted drinking about two quarts of beer each week. He stated:

> **SUMMARY AND RECOMMENDATIONS**
>
> Teri is a 39-year-old woman who achieved a K-BIT Composite IQ of 92, placing her in the overall lower side of the average range of intellectual functioning . . . .
>
> The examiner believes that she has significant mental health problems which requires significant treatment. She denied depression, denied excess anxiety or any particular problem other than occasional drinking. However, she gives multiple accounts of incidents and experiences, which seem to be delusions or hallucinations, with paranoid ideation and persecution frequently appearing. She is often disorganized, some might say with bizarre concerns or stories, with an overattention to small things while missing the larger picture of what is going on around her. Common occurrences take on special significance and can be elaborated in a delusional way. Therefore, the examiner believes her symptoms are best explained by Schizophrenia, Paranoid Type . . . .
>
> *The following recommendations are suggested:*
>
> (1) ***Consideration of Intensive Treatment for Teri Knauer:*** The examiner recommends Teri be referred for further medical treatment, for Schizophrenia, Paranoid type, and that this be mandated. It could start off with either outpatient treatment or inpatient. However, it might be best to

2

> start with perhaps hospitalization, medicating her then trying her on an outpatient basis. It is possible that she could be medicated appropriately, to the point that she could take care of herself and her children again at some point in the future. But that is something that is yet to be seen. In the meantime, the children might be placed with relative care, or foster care pending an evaluation of possible relative placement. In any event, it might be necessary for someone else to have care of the children while Teri gets treatment and appropriate medication.

Aside from indicating Schafer had schizophrenia (paranoid type), Dr. Bradford noted a global assessment of function (GAF) score of 30, evidencing an inability to function in most areas.

Schafer was treated by Robert J. Grant, Ed.D., for a total of four sessions, beginning July 31, 2003, through August 25, 2003. On July 31, Schafer presented for therapy on her own. She reported that her husband had been missing since 1998 and she felt something bad had happened to him but did not know what. She further reported that there was a lot of anxiety in her life and that she felt that people were out to get her and keep her from getting ahead. Dr. Grant noted: "She has a history of getting and losing jobs. She feels that people are sabotaging her and lying about her. She does not trust many people and described a lot of paranoid thinking." On August 7, 2003, Dr. Grant referred Schafer for a psychological evaluation with Linda M. Smith, Psy.D. In his notes regarding the referral, Dr. Grant explained, "She has presented paranoid thinking and an excited, hyper state. This has been consistent for two sessions." On August 18, 2003, Dr. Grant stated, "[Schafer] feels people in the community are lying about her and keeping her from getting hired." After August 25, 2003, Schafer did not return for any more appointments with Dr. Grant.

On September 12, 2003, Dr. Smith performed a psychological evaluation. Her report stated:

> **Summary, Diagnoses, and Recommendations**
> Ms. Knauer's overall picture is one of mild schizophrenia. She has had both auditory and visual hallucinations, although not constant; she considers them religious experiences. Her thought processes are generally confused, although she demonstrated the ability to problem solve with nonverbal information. Her speech is disorganized with frequent derailments, and she has excessive paranoia. She appears to have no comorbid mood disorder, nor does she have excessive anxiety . . . .
>
> At this point, Ms. Knauer's life appears to be in crisis. She is not able to hold down a job. In fact, she got confused about her appointment for this evaluation and, according to her therapist, is often confused about therapy times for her or her daughter. It is not surprising, therefore, that maintaining employment schedules is too difficult for her.
>
> Ms. Knauer urgently needs a psychiatric consultation and appropriate medical treatment for her disorder. She will also need ongoing therapy to help her maintain a medical regimen. It is hard to see how Ms. Knauer is managing to raise two youngsters with her impairments. She may need additional help from DFS and others involved with the family to get the support services she needs.

Dr. Smith observed that Schafer was extremely friendly and outgoing with an upbeat mood, and that she maintained good eye contact. She also noted that Schafer appeared to exaggerate some symptoms and minimize others, but this may have been the result of confusion; Dr. Smith did not believe it was a conscious attempt by Schafer to influence the clinical picture. Dr. Smith diagnosed Schafer with schizophrenia (residual type), alcohol abuse (rule out dependence), and other substance abuse (in sustained, partial remission).

On March 3, 2004, Dr. Grant—who had not seen Schafer since August 25, 2003—completed a Medical Source Statement–Mental (MSS-M) in which he indicated that

4

Schafer had eight different moderate limitations and was markedly limited in six different areas. Areas of marked limitation were in her ability to maintain concentration for extended periods, in her ability to perform activities within a schedule and maintain regular attendance and punctuality within customary tolerances, the ability to work in coordination with or proximity to others without being distracted by them, the ability to maintain a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

In a letter dated August 12, 2004, John S. Carpenter,[3] a social worker, stated that he had interviewed Schafer for three half-hour sessions over the previous month and that she was always composed, talkative, and appropriately motivated. He indicated he saw no evidence of a thought disorder, psychosis, severe mood disorder, or troubling personality disorder. He also stated, "She does not seem to have a serious psychological disorder. This is no obvious need for medication at this time." Carpenter diagnosed Schafer with situational anxiety.

On August 31, 2004, Betty A. Schlesing, Psy.D., conducted a psychological evaluation of Schafer. Schafer reported being employed at Trend West, a telemarketing service and described her health as "excellent." In her report, Dr. Schlesing stated:

**Test Findings**:

---

[3] Schafer argues the ALJ impermissibly relied on Social Worker Carpenter's evaluation because he is not an acceptable source, an argument directly refuted by the Social Security Administration's regulations. *See* 20 C.F.R. § 404.1513(d) (noting agency "may also use evidence from other sources" including "Public and private social welfare agency personnel").

> Intellectually Teri is functioning in the Low Average Range of Mental Abilities, having achieved Verbal, Performance and Full-Scale IQ scores of 86, 83, and 84 respectively. Her Full Scale IQ of 84 places her at the 14th percentile rank when compared with the normative chronological age group . . . .
>
> She achieved scores that indicate ability that is in the low average range on tasks that require word knowledge, sequencing ability, social skills, and the ability to put into words her knowledge of cause and effect relationships. Teri achieved a score that indicates a severe weakness on the task that measures the ability to distinguish essential from non-essential detail.
>
> Reality testing abilities (the ability to distinguish between her needs, wants, wishes, and that which she can obtain from external, objective reality) are poor. Loose associations, disjointed thinking, dependency issues, self-focus and circumstantial reasoning diminish them.
>
> Teri is someone who is inflexible, and becomes easily stressed with any change in routine. She had difficulty dealing with novel or ambiguous situations. When in coping or stressful situations, Teri tends to use emotional responses rather than thinking about what may be the best solution for any given problem. In addition, she is self-focused, and has an inflated view of herself, her abilities, and believes that she has special skills that others don't or can't have. Given this self-view, when something happens that spoils this self-view, she then experiences confusion in her emotional functioning. At those times it is difficult for her to know what to do or how to act; she tends to rely excessively on past experience to justify her actions, and tends to think in very concrete terms. Thus, if she can see it or feel it, it is real to her.
>
> Teri prefers a passive role whereby responsibility for life decisions is placed on others. She likes to have others make her life decisions for her, or let life events happen as they will and in that way attribute fault to others for any problems that occur. . . .

Dr. Schlesing diagnosed Schafer with parent-child relational problems and mixed personality disorder (narcissistic and dependent features). She recommended psychotherapy.

On November 29, 2004, a Review Hearing memorandum from a Missouri Department of Social Services (Children's Division) social worker to the Christian County Juvenile

6

Office indicated that Schafer was employed at Trend West and McFarlain's Restaurant. The social worker indicated that it was believed that Schafer's psychological issues posed a bigger problem than her possible drug/alcohol addiction, and it was suggested that she seek counseling.

On April 28, 2005, Frances J. Anderson, Psy.D., evaluated Schafer on referral from the Disability Determinations Division. Schafer reported that she was not being treated for any medical condition at that time. She denied any problems with depression or anxiety, except due to financial reasons. Schafer explained she had been employed at Celltex Cellular for the past month. Her speech was adequately articulate and presented with more than adequate, often dramatic, spontaneous detailed information. She was logical, coherent and goal directed. Dr. Anderson noted there was no evidence or report of hallucinations, delusions, confused thinking or suicidal ideation; "[t]here was no evidence of even mild schizophrenia." Schafer was said to be in the low average range of mental ability with verbal, performance, and full scale IQ scores of 91, 100, and 95. It was noted that it appeared that she could adequately understand and remember at least moderately complex instructions. Her ability to sustain persistence, pace and concentration appeared to be adequate for at least moderately complex tasks. Her ability to socially interact appeared adequate. Dr. Anderson stated that Schafer seemed to put forth her best efforts throughout the evaluation. Schafer was diagnosed with alcohol abuse (by history), personality disorder (not otherwise specified), and assigned a GAF of 60, indicating moderate symptoms. Dr. Anderson then completed a MSS-M which showed Schafer could work on a sustained basis with simple and complex

7

tasks and changes in simple (probably complex) work settings. Additionally, it was noted that Schafer could make simple (and probably complex) work-related decisions without increased supervision.

On June 21, 2005, Eva C. Wilson, Psy.D., performed a psychological evaluation of Schafer. At the time it was noted that Schafer "could not, however, tell me any symptoms of paranoid schizophrenia, and she did not appear to have them today." Personality inventory testing indicated that Schafer answered in the fashion of a person who is exaggerating her mental problems. Dr. Wilson stated that she saw "no reason why this woman would not be able to work. Perhaps she is not motivated. She can understand and remember simple, semicomplex, or complex instructions. She could sustain concentration and persistence with simple, semicomplex and complex tasks. She could interact socially and adapt to her environment." She diagnosed Schafer with alcohol abuse in remission, personality disorder (not otherwise specified) and assigned GAF of 60, indicating moderate problems.

On July 13, 2005, Dr. Wilson completed a MSS-M in which she indicated that Schafer had a markedly limited ability to get relationships going and make plans independent of others. She also noted a markedly limited ability to maintain a normal work day and work week without psychologically-based interruptions. Additionally, Schafer was markedly limited in her ability to deal with and carry out detailed instructions. Schafer also had numerous moderate limitations according to Dr. Wilson.

## II. Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Jackson v. Bowen*, 873 F.2d 1111, 1113 (8th Cir. 1989) (quoting *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choices." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886); *see also Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996) ("If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner.").

### A. Severe Impairments

The ALJ evaluated Shafer's disability claim under the sequential analysis prescribed by the Social Security regulations. *See* 20 C.F.R. § 404.1520(a)-(f). The ALJ stopped his analysis at step two, determining that Schafer failed to establish the existence of a severe impairment or combination of impairments. *See Caviness v. Massanari*, 250 F.3d 603, 605

9

(8th Cir. 2001) (noting claimant has burden of showing severe impairment at step two, but that burden "is not great"). As the Eighth Circuit has explained:

> To show a severe impairment, she must show that she has 'any impairment or combination of impairments which significantly limits [the applicant's] physical or mental ability to basic work activities.' If not, the applicant does not have a severe impairment and benefits are denied. The ability to do basic work activities is defined as 'the abilities and aptitudes necessary to do most jobs.' Examples include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co workers and usual work situations; and dealing with changes in a routine work setting.

*Williams v. Sullivan*, 960 F.2d 86, 88 (8th Cir. 1992) (citations omitted).

"The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness*, 250 F.3d at 605 (citing *Nguyen*, 75 F.3d at 430-31). However, this is a de minimis standard. *See Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007) (citation omitted). The First Circuit has explained that step two is "a threshold test of medical severity to screen out groundless claims—*i.e.*, those claims that, on a common sense basis, would clearly be disallowed were vocational factors to be considered." *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). The ALJ's opinion acknowledged this standard with its citations to 20 C.F.R. § 416.921 and S.S.R. 85-28.

In his opinion, the ALJ found that Schafer had medically determinable findings of personality disorder (not otherwise specified), a long history of polysubstance abuse in partial remission, situational stressors, anxiety, and family and parent relationship issues. After noting there were numerous inconsistencies in the medical evidence, the ALJ recognized that Dr. Bradford and Dr. Smith indicated that Schafer had schizophrenia, but that a majority of the medical reports explained her behavior was the result of other conditions. The ALJ discounted Dr. Grant's MSS-M because it was filled out several months after he last saw Schafer, and the basis for his medical findings were unclear since he only saw Schafer four times for family counseling. The ALJ found that the observations and opinions of Dr. Schlesing, Dr. Anderson, Dr. Wilson, and Social Worker Carpenter were all consistent—none diagnosed Schafer as schizophrenic. However, the ALJ discounted Dr. Wilson's MSS-M because it was contradictory to her narrative report concerning Schafer's mental residual functional capacity. Because Dr. Wilson's narrative report was consistent with the opinion of Dr. Anderson, who completed a comprehensive evaluation of Schafer, the ALJ accorded Dr. Wilson's narrative report greater evidentiary weight than the checklist form dated several weeks after the evaluation.

Considering the record on the whole, the ALJ erred in finding that the "majority" of the medical testimony did not meet the (low) threshold of a severe mental impairment. Dr. Bradford, after conducting a psychological assessment of Schafer, noted that she seemed to have delusions or hallucinations, had paranoid ideation, and was often disorganized with overattention to small things. Based on those observations, Dr. Bradford found Schafer's

11

symptons were best explained by Schizophrenia, Paranoid type, and referred her for further medical treatment. He also assigned her a GAF score of 30, indicating very severe limitations. Dr. Grant, who evaluated Schafer four times over a month, noted that Schafer felt that people were out to get her and keep her from getting ahead, and "[s]he feels that people are sabotaging her and lying about her." Dr. Grant explained Schafer "described a lot of paranoid thinking." As result of his observations, Dr. Grant referred Schafer for a psychological evaluation with Dr. Smith. In discounting Dr. Grant's observations, the ALJ failed to adequately explain why four sessions over a month-long period was inadequate, especially considering this was more than most of the physicians the ALJ did rely on and more than Social Worker Carpenter, who only saw Schafer for three half-hour sessions. *See* 20 C.F.R. § 404.1527(d)(1) (generally giving more weight to examining opinion); *id.* § 404.1527(d)(2)(I) (generally giving more weight to treating source that has seen claimant number of times); *see also Tate v. Shalala*, 19 F.3d 1437 (8th Cir. 1994) (table) (relying on opinion of treating physician who examined claimant only four times in a year to show claimant's objective complaints were inconsistent with medical evidence). The ALJ made much of the fact that Schafer went to Dr. Grant for family counseling, but the record reflects that Dr. Grant clearly evaluated her psychological and mental condition.

Dr. Smith reported that Shafer had mild schizophrenia, visual and auditory hallucinations, a generally confused thought process, disorganized speech with frequent derailments and excessive paranoia. Further, Dr. Smith noted that Schafer "urgently" needed a psychiatric consultation and appropriate medical treatment. Dr. Smith did not believe

12

Schafer consciously attempted to exaggerate her symptoms, and that this could be explained by general confusion. The ALJ did not explain why he discounted Dr. Smith's analysis, only to say that it was "inconsistent" with the "majority." After reviewing Dr. Smith's report, Dr. Grant completed his MSS-M. The ALJ explains that he could not determine the basis for Dr. Grant's conclusions on the MSS-M, and therefore accorded it very little weight. However, the areas of marked limitation—including her ability to maintain concentration, her ability to perform activities within a schedule and maintain regular attendance and punctuality, her ability to work in coordination with or proximity to others, and her ability to maintain a normal workday and work week without interruptions from psychologically based symptoms—are, contrary to the ALJ's assessment, all consistent with Dr. Grant's earlier assessments, as well as Dr. Smith's report, which Dr. Grant had read.

Dr. Schlesing conducted a psychological evaluation of Schafer and found she had a low average range of mental abilities with a full-scale IQ score of 84. *See Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006) (holding, in case where claimant had full-scale IQ score of 83, "that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment that must be considered by a vocational expert"). In addition, Dr. Schlesing explained that Schafer's scores indicated a severe weakness on the task that measures the ability to distinguish essential from non-essential detail, and that her reality testing abilities were poor: "Loose associations, disjointed thinking, dependency issues, self-focus and circumstantial reasoning diminish them." Dr. Schlesing recognized that given Schafer's self-view, "when something happens that spoils

13

this self-view, she then experiences confusion in her emotional functioning." Finally, Dr. Schlesing diagnosed Schafer with parent-child relationship problems and mixed personality disorder (narcissistic and dependent features). She then recommended psychotherapy for Schafer. Although the ALJ stated Schafer suffered from a mixed personality disorder, he did not explain why he ignored Dr. Schlesing's finding of narcissistic and dependent features, as opposed to the less-restrictive "not otherwise specified," despite relying on Dr. Schlesing's other findings.

Dr. Anderson evaluated Schafer and did not see any evidence or report of hallucinations, delusions or confused thinking. She did note Schafer had a low average range of mental ability with a full-scale IQ score of 95. Dr. Anderson also diagnosed Schafer with a personality disorder (not otherwise specified) and assigned a GAF of 60, indicating moderate symptoms. Dr. Wilson performed a psychological evaluation of Schafer, and although she did not see any reason why Schafer could not work, she still diagnosed her with a personality disorder (not otherwise specified) and assigned her a GAF score of 60. Dr. Wilson also completed a MSS-M, which indicated Schafer had a markedly limited ability to get relationships going and make plans independent of others; to maintain a normal workday and work week without psychologically-based interruptions; and to deal with and carry out detailed instructions. These conclusions are consistent with both Schafer's work history and the majority of the medical opinions, and are not necessarily inconsistent with Dr. Wilson's original diagnosis.

14

Thus, contrary to the ALJ's findings, the record on the whole supports that Schafer had severe mental impairments that would have more than a minimal impact on her ability to perform basic work. The medical opinions overall are very consistent that Schafer suffers from various mental impairments and confused thinking. The transcript of her testimony before the hearing clearly demonstrates that confused thinking as well. As a result, substantial evidence reveals this is more than a groundless claim, and it was outside the ALJ's zone of choices to find the record did not support a severe impairment.

**B.    Treating Physician**

Next, Schafer argues that the ALJ erred in not giving controlling weight to Dr. Grant as her treating physician. The Eighth Circuit has explained:

> While a "'treating physician's opinion is generally entitled to substantial weight[,] . . . such an opinion is not conclusive in determining disability status, and the opinion must be supported by medically acceptable clinical or diagnostic data.'" *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (quoting *Davis v. Shalala*, 31 F.3d 753, 756 (8th Cir. 1994)); *see also* 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosh v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (quotation and citation omitted). In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations. 20 C.F.R. § 404.1527(d)(2)(I).

*Casey*, 503 F.3d at 691-92.

On remand, the ALJ is instructed to take into consideration the factors listed in 20 C.F.R. § 404.1527, as well as in Eighth Circuit caselaw, to determine whether Dr. Grant is

15

a treating source and to weigh his opinion. The ALJ is reminded that he cannot find Dr. Grant is not a treating physician simply because he only saw Schafer four times. *See* § 404.1527(d)(2)(I); *see also Tate*, 19 F.3d 1437 (noting doctor who examined claimant four times in one year was a treating physician).

### C. Schafer's Subjective Complaints

The ALJ evaluated Schafer's subjective complaints in light of the factors contained in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). Under *Polaski*:

> The absence of an objective medical basis which supports the degree of severity os subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of medication;
>
> 5. functional restrictions.

*Polaski*, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id*.

On remand, the ALJ will necessarily have to reevaluate Schafer's subjective complaints under *Polaski*. As part of this reevaluation, the ALJ is required to consider Schafer's daily activities. However, the ALJ must keep in mind the Eighth Circuit's admonishment in *Reed v. Barnhart*:

16

> Furthermore, we must guard against giving undue evidentiary weight to a claimant's ability to carry out the activities incident to day-to-day living when evaluating the claimant's ability to perform full-time work. . . . Although "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility," *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001), "this court has repeatedly observed that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'"

*Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing *Banks v. Massanari*, 258 F.3d 820, 832 (8th Cir. 2001) ("How many times must we give instructions that [watching television, visiting friends, and going to church] do not indicate that a claimant is able to work full time in our competitive economy?")).

In determining Schafer's credibility, the ALJ may also take into account her acceptance of unemployment benefits, which the Eighth Circuit has consistently held "is facially inconsistent with a claim for disability." *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (citing *Salts v. Sullivan*, 958 F.2d 840, 846 n.8 (8th Cir. 1992)); *see also Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994). The ALJ should remember, however, that acceptance of unemployment benefits on its own does not negate her credibility. *See Cox*, 160 F.3d at 1208 ("Where, as here, there is no other evidence to detract from the claimant's credibility, the negative inference is not sufficient, of itself, to negate the claimant's credibility."); *see also Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989) ("In making credibility determinations, the ALJ may look at a number of factors, including the objective medical evidence, treatment, therapy, observations of a witness's demeanor and physical appearance, and the claimant's daily activities.").

17

### III. Conclusion

Accordingly, it is hereby

ORDERED that Schafer's petition [Doc. # 3] is GRANTED IN PART. The decision of the ALJ is REVERSED and the case is REMANDED for further consideration consistent with this Order.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: January 22, 2008
Jefferson City, Missouri